730

David D. Sallee, George Appell, and Samuel Gelberg, all of Los Angeles, Cal., for appellant.

Marion P. Betty and Thorwald Siegfried, both of Los Angeles, Cal., for appellee.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appellee, as trustee in bankruptcy for Deauville Beach Club, a corporation, on petition, obtained an order from the referee, requiring appellant as trustee in bankruptcy for Deauville Holding Company, Ltd., a corporation, to deliver certain funds and claims to appellee. The bankruptcy court sustained the referee by an order, from which this appeal is taken.

The amended petition alleges, among other things, that on September 7, 1926, a contract in writing (hereinafter referred to as the first contract) was entered into between Deauville Holding Company, Ltd., and Deauville Beach Club. Some of the terms of the contract were set forth, and it was further alleged "that a true copy of said contract" was attached to the petition.

It was also alleged in the amended petition that "each [appellant and two others] has collected and has on hands, funds collected from members of the Deauville Beach Club for locker or service charges in violation of the terms of the above described contract in that the members did not use and enjoy said privileges. That said funds are of right and in law, the assets of the Estate of Deauville Beach Club, a bankrupt."

It is unnecessary to notice the other allegations.

Appellant urges a great many questions regarding the admissibility of certain evidence, and the sufficiency of the proof; but we regard none of them as being properly raised, for lack of objections, exceptions, proposed findings, and motion for judgment, and therefore will not consider them.

The contract provided that Deauville Holding Company, hereinafter referred to as the holding company—

" * * * shall have the right

"1. To receive as its own property and to use as it may see fit, * * * all charges for locker or other club services or dues * * *."

The Deauville Beach Club, hereinafter referred to as the Beach Club, agreed: "To allow the [holding company] to collect all moneys to which the [holding company] is entitled under the terms of this agreement or if any part thereof be collected by the [beach club], to promptly pay over the same to the [holding company] as the property of the latter."

It was further provided that members of the Beach Club should have the right to the use of the property, subject to the terms of the above agreement; and that: "It is understood and agreed that the locker or service charges hereinabove referred to (as distinguished from dues or other charges)—shall be construed to be a charge for the use of the clubhouse and its privileges and shall create no compulsory obligation of the members owing the same to pay such charges, except as a condition precedent to the use and enjoyment of such privilege, and no membership shall be terminated or forfeited because of the failure to pay such service or locker charges; any member in arrears in such service charges may pay the same and be restored to the use and privileges of the Club * * *."

The referee found that the holding company "collected all the locker and service charges from said members of the [beach club] in advance, and refused to allow the said members to use or enjoy the said privileges of the Club unless the said locker or service charges were paid in advance."

The prayer of the petition asks for a transfer to appellee of the funds and claims in the possession of appellant and "to treat the same as a trust fund held by [appellant] for the benefit of" appellee.

If the petition be treated as being in the nature of a replevin or claim and delivery action, then appellee must show that he has a superior right of possession to that of appellant. Southern Pac. Co. v. Bank of America (C.C.A.7) 29 F.(2d) 465; 54 C.J. 435. Under the trust fund doc-

trine, that the assets of a corporation are held in trust for the benefit of its creditors, appellee (who was acting in the place of the creditors of the beach club and for them) would be entitled to impress a trust on these assets or their proceeds in the hands of the holding company, only if the beach club owned the said assets or some interest therein; for if the beach club had no interest, there is nothing upon which a trust may be fixed. Under such theory it is not a question whether the property held by appellant is property belonging to some one else, but a question as to whether appellant holds property which in fact belonged to appellee. For a discussion of the trust fund doctrine, see 5 Thomp.Corp. 252, § 3422 et seq. It would establish a curious doctrine should we hold that a person holding property wrongfully obtained from another could be held a trustee for creditors of a third person, when the latter had no interest in the property.

Here, under the contract, there is no provision anywhere giving appellee either right of possession of the locker or storage charges, or any interest therein. In fact, the provisions of the contract are that if appellee does obtain possession he must "promptly pay over the same to the" appellant. Appellee is given no interest (as distinguished from the right of possession) in the property, for the contract provides that appellant "shall have the right * * * to receive as its own property and to use as it may see fit * * * all charges for locker or other club services or dues * * *." Appellant may have violated paragraph 13 of the contract, but so far as appellee is concerned that paragraph gives him no right of possession or interest in the proceeds.

We have given little consideration to the fact that the contract was rescinded by an agreement between the holding company and the beach club on March 26, 1934. In this latter agreement it is provided that from and after a certain date the beach club would provide, at its own expense, the usual and customary beach club facilities for its members, and upon the premises described in the original contract. There is no proof that any of the funds collected, were in payment of the locker or service charges, after the time when the holding company no longer furnished the facilities. Further, the alleged violation is of the terms of the original contract.

Reversed.